All right, the first case we're going to call this morning is Gilliam v. Allen, and Mr. McElatchy, we'll hear from you first. Thank you, your honors, and may it please the court. This case needs no introduction to this panel. This court explained on its remand in the year 2019 that what happened in the two interview rooms at the Red Springs Police Department that night in September 1983 were at the heart of this case. As the panel knows, the case proceeded to trial in May of 2021. It resulted in what has been called by the media the largest wrongful conviction verdict in the history of the United States. That verdict, however, was the product of a trial that was infected with a lot of error. The district court on remand determined how the case was going to play out, and it did what it could to steer the case there at every juncture. First, the district court told the jury that the plaintiffs were innocent, factually innocent for purposes of the civil case, and the district court did its best to preempt any contrary theory from the defendants wherever it could. Let me ask you about that. Yes. I've thought a lot about this pardon, and as I was reading the case, a lot of time was spent at the trial talking about it, and some time passed, I was a district judge, and I tried to figure out what would I have done with that, and it's not an easy call, but I'm wondering, number one, why the pardon was offered into evidence and admitted in the trial, because the only necessary element would be the court's reversal of the verdict and release of the defendant, and the second is the enormous attention that was paid to the pardon during the course of the trial. People tried to talk whether he was innocent or guilty or factually this, and they talk about it, and the judge would give an instruction. Did you object to the entry of the pardon and even the information about the pardon? Yes, your honor, that was the subject of a motion in limine, and there was a hearing on that on March 17th of 2021, not long before the trial, and during that hearing, the district judge told us, you are not going to impeach the pardon. The pardon is the word of the state. The governor declared them innocent, and basically you're not going to get anywhere around that. Well, I understand that, but you know, pardons cover the full range. It could have been that the governor pardons a former playmate that he played over the years with, and he liked him, and he just pardoned him, and we don't go behind the pardons, but the question, my question, is why was the pardon even an element of evidence? Did you object to the introduction of a pardon at all? I'm sorry? Did you object to the presentation of the pardon information at all? It was, yes, the motion in limine was to exclude it altogether, and that was denied, and so the pardon was part of the case, and then the issue, your honor, and you pointed out that for purposes of satisfying the favorable termination element of a malicious prosecution claim, the plaintiffs needed only to show favorable termination, and that element was satisfied by the ruling on the motion for appropriate relief in superior court where the judge granted that. Well, that was my view. That's probably where it should have been, should have ended, but my question. I would agree, because the pardon, what happened, your honor, then, once it was in, it was the preclusive effect of the pardon. But you never did, to go back to Judge Niemeyer's question, you did not object at trial, I heard about the motion in limine, but you did not object at trial to the introduction of the pardon, correct? Or not? I never heard an answer. I don't know. I don't recall that there was specific objection at trial, because the ruling on the motion in limine was conclusive. There was no wiggle room like, well, I'll review it later, it was, no, your motion is for a ruling that it was admissible. And so the judge's ruling on the motion in limine was to deny ours, and grant the plaintiff's. Well, it also seemed like a large part of appellant's argument at trial was to say that they were not innocent. So the way... And that is what caused the court to manage the trial the way it did. The court managed, I believe, the trial the way it did was because the court misinterpreted the effect of the pardon and made it conclusive. What was appellant's theory of the case? Did appellant not continue to argue that they, or at least give the impression that they were not innocent? That the confessions were valid? Right. The plaintiff's theme... So you're saying, right, that was the theory? The defense theory at trial was that what was on those written confessions did in fact come out of the plaintiff's mouths in that interrogation room. The plaintiff's theory, on the other hand, was no, no, no, those were coerced, those were fabricated, they were told to sign them, they were something else. So it became essential for us... Right, because that is, as you said at the beginning of your argument, that was the heart of the case. Yes, your honor. Whether the confessions were coerced or not. So I don't know why appellants were so intent on proving the plaintiff's guilty. You could argue they weren't coerced without all of that, couldn't you? Not in this case, your honor, because what happened here was that the way the plaintiff's case was presented was that the confessions were coerced. They produced expert testimony. Why would an innocent person confess, well, when they're coerced? And so you have the district court repeatedly telling the jury they are innocent. It is, in the judge's words, conclusive. At another point, they are innocent for purposes of this trial. And so you have the jury being told they're innocent, they're innocent, they're innocent, plus expert testimony. Why does an innocent person confess? Because they're coerced. Here's the rub I've got. So the question I've got is, understanding why you wanted to argue that they committed these crimes and therefore their confessions were true, and therefore that suggested that they're not coerced. But so I understand that side. But yeah, the judge here makes a judgment that like this executive branch determination, a pardon of innocence goes to the evidence that weighs there, just like we might introduce a conviction to prove the existence of guilt. The pardon of innocence is some evidence. And so, you know, I'm not sure like Judge Niemeyer, I don't know whether I would have done that or not. But given the discretion we give to the district court in letting juries sort of see the facts and make a determination, you get to argue they did it. They get to argue they didn't do it. What's wrong with that? That's what juries do, right? What your honor is referring to is the simple, what I say, foundational issue of it coming into evidence. What the error was, was the judge making it basically anesthetical. OK, all right. So stop. Fine. I understand that. That's a separate argument. Right. But what you're saying is, yeah, no problem with it coming in or you're not. Right. So I want to talk about the first problem. I understand you want to say the judge did other things wrong. But the problem that we're talking about, the judge was asking about is it comes in And then the parties get to have that debate in front of the jury. And the parties are free to argue what they want and present evidence that supports their theories of the case. But here we were cut down by the district judge when we tried to introduce. But again, go back to the premise here. What you're saying, your response to my argument is to go to the next step. Are you agreeing that the pardon was appropriate to be entered? Had you been given the authority to address otherwise? No, your honor. I don't believe that the pardon. That's why we moved to exclude it. You have a you have a law and order governor like Pat McCrory. Pat McCrory was very well liked in the state. He when he was elected, he had bipartisan support. He was known as a law and order judge. And so you have a jury hearing that a Republican law and order governor like Pat McCrory says, well, I'm going to give these men pardon and sub innocence that places the imprimatur of the chief executive of the state on the same. The same thing happens if we introduce a conviction to prove guilt. Right. So a jury has determined guilt. Right. Yes. That's the whole nature of the story. Right. That's what evidence is. But your honor, this was not a jury. This was an ex parte proceeding where the governor on his own looked at whatever he looked at and said using his constitutional authority, his constitutional authority to grant pardons of innocence on whatever terms or for whatever reasons he may deem proper according to the state constitution. There's no dispute that he had the power to do that. But that was used as basically an estoppel against us. And we were cut off and precluded and berated in front of the jury from ever suggesting otherwise. Yes. You mentioned otherwise and you aggravated the problem a lot by trying to somehow marginalize the it seems to me if it comes in, the best way to come in would have been simply a statement by the court to say that you should know that the governor pardoned these people after pardon innocence and not even introduce a document. Just get that fact before the jury. But when you go and try to attack the I mean you can't attack a pardon because the breadth of the pardon power is so broad it covers exactly what I said. It covers friendships, it covers acquaintances, it covers injustice, it covers all kinds of things. And it's up to the governor to decide what he wants to do on that. It's not an adjudication. I agree it's not an adjudication but the district court told the jury that the governor has determined as a matter of law, the district court used those words, as a matter of law that they are innocent. And that It would have been nicer to say they were innocent because of the MAR order. Or something to that effect. We had requested a jury instruction that would at least couch this in terms of you have heard evidence that there was a pardon. You may give that whatever effect as you see fit. We actually followed it and crafted it from an instruction given in I believe the Northern District of Illinois in a wrongful conviction case. That was not given. The judge at the hearing on the motion in Lemonade in March of 2021 when he said well it's coming in and you're not going to be able to attack the pardon if there's any issue. Would you have been fine if the court had said they were found innocent by the MAR court? Well the MAR court, but the MAR court did not. The MAR court So you wouldn't have been fine with that either because your theory of the case was that they weren't innocent. My theory of the case is your honor, we can talk about actual guilt, actual innocence. What we're talking about is did they say without coercion what was in those confessions because if they did then that supplied probable cause for their arrest and prosecution as a matter of law. You have a lot of other issues. Are there any others that you find important before your time runs out? Yes your honor. Briefly, thank you for asking. I believe that the other major point of error in the case, if I had to rank them, was the district court's treatment of plaintiff's first witness, which was District Attorney Luther Britt. Mr. Britt was the district attorney in 2014 when the conviction. Can you start reverse order? Can you start with telling us why, if I assume that everything you said is correct and was in error, why it was harmful? It was harmful. Why it was not harmless is another way of saying it. It wasn't harmless error your honor because it infected the entire way the case was presented to the jury. The error was that they're innocent for purposes of this trial and then their theory is innocent people confess only when they are coerced and when you drive it and present it in that manner, the jury could logically come up with a... I'm talking about the testimony of Britt. You were turning to talk about Britt's testimony. I was. Alright. I just hadn't heard anything about Britt's testimony. That's what I was trying to understand. I misunderstood your question your honor. Yes, with regard to Luther Britt, what was the harmful error or the reversible error? Mr. Britt, here's a man in the year 2021, testifying in a court about what he thinks may have happened, might have happened in two interview rooms back in the year 1983. At a time when he's a college student. He doesn't even become a lawyer until years later. Doesn't become district attorney until years after that. Yet when he purports to tell the jury that referring to my clients, I don't find what they have to say credible telling this to our jury. Was he familiar with your clients? He was familiar with one years later when he became district attorney, but not back in the year... But prior to this trial. Prior to this trial. Prior to this trial. Yes, your honor. He was familiar with him. He was familiar with Ken Sneed. And his reputation. And his reputation years later when he became district attorney. The evidence in this case was when Ken Sneed appeared on that crime scene, he was the next to the bottom of the totem pole in terms of seniority. He was a relatively new agent. But going back to Judge Richardson's question, if I may just finish that. The error was that you have this man who the district judge vouched for. The district judge told the jury and used the words. This man, he referred to his, the district attorney, this is a quote, is extremely experienced and credible. He told the jury that this man's credentials are sacred. And so he put that legitimacy on him for anything that came out of his mouth. And then that district attorney told the jury that, oh, in that room, quote, I believe their voices would have been raised. There would have been yelling. There may have been cussing. There may have been swearing. There may have been threatening remarks made. That was pure 100% speculation. I thought that quote, I don't know if that quote or one similar to it, I looked it up and I thought his testimony was that he had a reputation for that. And you, you, you plucked the last part out and left off the word reputation. No, no, no. Well, excuse me, Your Honor. But at that point, he is responding to questions from plaintiff's counsel, articulating what he thinks happened in that room just because of the nature of. I know, but that was in regard to he had a reputation for that. No, what is what Your Honor? I believe if I believe Your Honor is referring to was testimony that was elicited by the plaintiff that Mr. Britt was aware. And obviously he wasn't even a lawyer then, but later became aware that the FBI considered Agent Snead, one of the two agents, a closer. But again, that went to something years later. A specialist that was brought to quote, break in a person during the course of an interview and that he had a reputation for that. That was part of Britt's testimony. That was part of Britt's testimony. Yes, Your Honor. But, but the broad statement. And he also testified, we'll have to look it up again, but he also testified similarly that his reputation was to holler and this type of thing, scream. And therefore he concluded that's probably what happened because that was his reputation. But this is something we ought to check and we'll look, we'll look in the record on that. Thank you, Your Honor. So I am obviously well over time. Are there any further questions from the panel? Okay. You have some rebuttal coming. Thank you, Your Honor. Yeah. Ms. Stetson. Thank you, Your Honors, and may it please the court. My name is Kate Stetson. I represent the appellees Leon Brown and Henry McCollum. We covered just two issues in counsel's opening argument, so I'm going to restrict my response to those two issues unless the court has other questions. I do have a couple of questions for you, but why don't you lead off? Certainly. And I'd like to start actually, Judge Richardson and Judge Niemeyer, with the colloquies you were having with counsel about the admission of the pardon, and I want to try to untangle a couple different lines of questioning there. You asked, of course, about the admission of the pardon in the first instance, Judge Richardson, and then there's the question about the use of the pardon or the effect of the pardon at trial. The admission of the pardon, as you pointed out, Judge Richardson, is completely within the district court's discretion, particularly when, as all of the cases that either of these parties have been able to find point out, the defendants are still contesting guilt. That's Hill, that's Howard, that's Sanford v. Russell, which also points out that the Seventh Circuit actually Yeah, but see, the problem with that is they may still be contesting guilt, but you have the benefit of an MAR saying that the evidence was insufficient. The determination by the governor to pardon is not a determination of guilt. It is a pardon of innocence, and it is done for any reason that the governor can think of, and he makes a totally discretionary decision. My biggest problem is why was that introduced and why did you guys want to press it? You had a lot going for you, and the problem for me is not that it was just introduced. It came up again and again during the trial, and the jury were constantly told the governor declared him to be innocent. We can't challenge that. Well, what does a jury try to figure out what that means? So Judge Niemeyer, let me start by just pressing back a little bit on this idea that the governor can pardon and issue a pardon of innocence for any reason he wants. He can't. He issues a pardon of innocence because he has concluded, based on the entire record, that the people before him are innocent. That's why these two plaintiffs were entitled to statutory compensation. That's the prerequisite. But to get to your subsequent question, that's the reason That's the nature of the pardon, but what he goes through and why he does it is unimpeachable, and there's no trial. He doesn't adjudicate that. We have courts for that, and the court did adjudicate that. And the question is, that's not even an element of your claims in this case. The element is the fact that the evidence turned out to be insufficient, and that was an adjudicatory process. Judge Niemeyer, the instruction that the court gave the jury at page 1912 of the joint appendix was that the governor had issued a pardon of innocence. That was an instruction that was unobjected to by the defendants. But more to the point, the reason that this kept coming up at trial goes to your question, Judge Thacker, about the theory the defendants were pressing at trial. The defendants were pressing a major theory at trial that they said over and over again. This is joint appendix 1015 and 1016, the opening arguments. These defendants confessed. They confessed over and over and over again, and boy, did they get that into the trial. Just the video alone of Henry McCollum confessing was shown at, and I apologize for the litany, joint appendix 1019, 1020, 1104, 1108, 1251, 1335, played for the jury while cross-examining Henry, 1672, 1881, 1931. That was their theory, was that these defendants had confessed. But further to that, Judge Thacker, you started by pointing out that Mr. McClatchy had started his argument by saying something that this court also said in its first opinion. What happened in the interrogation room is at the heart of this case, and the opening brief of appellants said the same thing at page three. You have also the strong evidence, you actually put on the plaintiffs, and they testified, and the jury is clearly entitled to make that determination as to what happened. The question in my mind when I raise this pardon question, because I personally haven't come across that since I've been on the court, of having a pardon introduced as evidence in a case. And that wouldn't be so bad in my mind, except how it was used in the case. And maybe that's all right, because it's parallel to the MAR, but that's where my questions were. I do have a question totally different that has not been argued, but I'm going to ask you about this prejudgment interest, $36 million. Prejudgment interest is compensatory, right? It's for the loss or use of money? Yes, it's equitable and compensatory, yes. And why is it equitable? Loss of use of money, interest, is not inequitable. It's treated in some cases by the discretion of the judge to add afterwards, and that's what I want to get to with you. But it's for the loss of use of money, which is a totally pecuniary computation. And the most traditional notion is when somebody sues on a note and the jury gives back the payment of the note but doesn't include the interest, the court can add the interest. That's the traditional method when there's a liquidated amount. In torts, the whole discussion is much broader. But my question is a little bit more fundamental than that. Here we have a jury that's given a very broad instruction on damages. I've read the instruction a couple times. And the jury can give compensation for just about anything, including monetary, pain and suffering, loss, all these things. And the judge said it's for you to determine. Well, the jury comes up and determines $31 million for each plaintiff and says that's our number. The court comes in and adds $36 million in compensatory damages. And he's given it for interest, pre-judgment interest, which is a computational notion. How do we justify a court coming in and adding to a jury's verdict? A couple of responses, Judge Niemeyer. The first is you'll recall... You can start with the constitutional issue, but you can go anywhere. I mean, the jury trial right. I'd like to start with the waiver issue, actually. These defendants did not raise this issue below. And the fact that they... They challenged the pre-judgment interest. They challenged the interest. They didn't say this should have gone to the jury. And that's a flat waiver. So, but to your constitutional question, what this court has never held, that a judge cannot compute pre-judgment interest. And in fact, we point out the Supreme Court in Osterneck held, with respect to a jury trial, that it was sufficient for a judge to compute pre-judgment interest, precisely because it is equitable. And to your point, Judge, about the 36 versus $31 million. How can it be equitable? Pre-judgment interest was awarded at 8%. That's computational. And pre-judgment interest is a compensatory damage. And the jury was given a full blow on what compensatory damages it could award. And it chose $31 million. And the question now is, is the judge adds another $36 million, well, $18 million person to the verdict. And he does it without any money owed back then. The money wasn't owed until judgment. And the determination of the amount wasn't owed. I mean, these are all fundamental questions. You can cite cases where judges have blurred this type of thing. But the whole notion is, we have juries to make, award compensatory damages. And it's not equitable. It's computational. So, I think. If somebody calls it equitable, they're just wrong. It has been called equitable. And I think there's really not a dividing line between equitable and computational. But to your underlying question, I think there is, if there's an academic debate out there, particularly in the First Circuit, not in the Fourth Circuit. All of the cases that defendants cite, of course, are in the First Circuit Court of Appeals. If there's an academic debate, this is not the case to resolve it, where this issue was not presented to the district court. This is a 50% addition to a jury verdict based on compensatory damages? Yes. This is not punitive. This is not post-judgment interest. This is just adding to the compensatory damages, which were already quite large. And they were quite large, because what the jury awarded. Yes. What the jury awarded was $31 million for every year that these two men spent wrongfully in prison. So, the $36 million, that is a large number. Can I ask a question on the premise you said? You said, and I take your point, that your argument is it wasn't argued below. And what I'm curious about is the argument that's made in their opposition at page 8, where they seem to be making Judge Niemeyer's argument, right, that there was no allegation or finding that the defendants unlawfully deprived the plaintiffs of the use of any money due to them. This is the idea that we naturally think of pre-judgment interest in like a contract action where there's a determinate amount of money and they're depriving them. That seems to be the argument that Judge Niemeyer's making. Why, I mean, I get when you slice it super thin, right, that he doesn't use the exact words, but that seems close. No. Well, number one, I think there's the principle that this court has endorsed before, that a judge doesn't need to kind of pour over a defendant's pleadings looking for an argument that wasn't preserved. But Judge Richardson, that argument was made. I mean, it's on page 8, right? That argument on page 8 was made with respect to the idea that they did preserve below, which is that you cannot award full stop pain and suffering damages, pre-judgment interest on pain and suffering damages. That was their argument. The money that they were owed has to do with that reducible sum, the note that you were talking about, Judge Niemeyer. That's another argument. That's just merely the lack of a citation. The fact is they're basically saying you can't add to the jury's verdict. The jury is a jury. It's an institution, and the award of damages, compensatory damages, is committed to the jury. The judge has equitable remedies he can add, but money damages, money damages are committed to the jury, and we agree that this was money damages. Not only was it money damages, it was over 50% addition to the money damages, which is extraordinary in view of the fact that we have this sort of non-economic award of damages in the sense that it's related to pain and suffering and all the other things. I mean, the judge went on and on about the damages. Fair and compensation, you can do it for expenses of the plaintiff, you can do it for pain, suffering, mental anguish, shock, discomfort, other physical ailments. All of this the judge is telling the jury to do it. Not only that, the judge tells them you have to, with respect to the settlement, you have to award all the damages. I'll take care of the rest. In other words, you find out how much the persons were injured, the plaintiffs were injured, and get the full award for that, and then I'll take care of adjusting for settlements with respect to that award. And that's what the court actually instructed the jury. And so the jury gives its full award for the tort, and then the court refuses to take off $11.5 million, which they already received with respect to that same injury. So, Judge Niemeyer, you're moving to the set-off? I am. I'm talking about instructions to the jury, actually, and I bled into that. My biggest problem in this case is what I call this piling on with the $36 million of compensatory damages added by the judge, and then not giving them, the plaintiffs, the benefit of monies paid with respect to this very same injury. Okay, so let me just make one more point, if I could, on the prejudgment interest. I'm happy to turn to the set-off. Neither of these was the focus of the argument, but we can certainly turn to it. With respect to prejudgment interest, you've mentioned a couple times, Your Honor, the $36 million, the $36 million. The $36 million was because these two plaintiffs waited for 38 years for someone to recognize the harm that they suffered, the pain and suffering that they suffered from being on death row for 30 years. You're just launching into what is exactly wrong with the problem. In other words, it's the loss of use of money. But there was no determination that they were entitled to any money back then. The determination wasn't made until the jury said they were entitled to it, whereas normally prejudgment interest attaches to where there is a known amount in the past that's payable, and the jury verifies that, and the judge then gives the interest. I know there are cases that award it on torts, but I'm just telling you that that is conceptually a problem. One would separate in court from jury. Sure, and just one more point on that, and then I'm happy to turn to Sethoff. The harm has to be known at the time. When you talk about a known amount, the harm has to be known at the time. It's not determined. No jury, unfortunately, determined that these two men were innocent in 1983. It's the harm that accrued that forms the basis of the pain and suffering that leads to the prejudgment interest, but I understand your point. Interest is a sum added to an amount. It is. And there was no amount that existed back then. It was the amount the jury determined. And the ultimate amount could have been $10 million or it could have been $3 million. It was the amount the jury determined that argument was not preserved below and the court appropriately in its discretion awarded prejudgment interest. They didn't label it jury versus court, but that's about what you're arguing when you say the judge shouldn't have imposed. I think to the extent they tried to quasi-preserve it along the lines that Judge Richardson pointed out, I think this is probably not the case to try to indulge in the question about when a judge can or can't award prejudgment interest. Why is this a case? This is an extreme case. To have over 50% of the award made on prejudgment interest that the jury didn't award, and the jury could have awarded it. If the jury were told explicitly, you can award interest on the amount you determine also if you want. Now, the court didn't say that, but the court basically said you can award any amount that you determine is just and appropriate. And it seems to me if you argue that they should be given interest to the jury, they would listen to you. Your Honor, I take your point. And we could write law review articles about this. My point is that because this issue hasn't been decided by the Fourth Circuit, it would be better to wait for a case where this issue was actually preserved and fully aired below. But on the set-off point, let me make just a couple. It's not a set-off. It's not a set-off. Not a set-off. No, it is the notion that for an injury you get one satisfaction. That's the law. And the one satisfaction can be given by many people or one person. And then, of course, joint tort feasors can make claims among each other. But in this case, the court explicitly told the jury, don't worry about the settlement. Award the full amount of injury and damage. And I'll take the rest. Sure. So, Judge Niemeyer, we don't need to debate the label. The label really isn't important. What's important is that this was filed as a Rule 59e motion. And particularly with respect to two of the three items that the defendants are now claiming should have been set off, they were present from the very beginning. And Rule 59e, as this court has said repeatedly, is deserving of only those instances where something could not have been raised before judgment was entered. The court refused to deduct it when it entered judgment. In other words, it wouldn't come up until later because the court appropriately said to the jury, you find the full award, and I'll take care of the set, we'll call it a set off. They set off. And that's what the court told the jury. And then the court awards the full judgment and doesn't do it. Now, how do they object to a judgment entered in that fashion before the judgment's entered? They could have done it in a number of ways. With respect to the Red Springs settlement and the statutory compensation, which, by the way, is for a completely different type of harm, they could have done it at any stage of the proceedings. Motions in limine, the answer to the complaint, any time before trial. And during trial, they could have said before this court entered judgment, after the jury delivered its verdict, after the jury was dismissed, after final proceedings were wrapped up, they could have said, by the way, Your Honor, we would like a set off not only for the Red Springs and statutory settlements that occurred years ago, but for the settlement that just occurred last night. We would like that set off. We are now moving for it. They cannot wait for 30 days until Rule 59E kicks in and then file a Rule 59E motion saying, by the way, this is new stuff. It's not new stuff. They should have argued it right from the beginning, and they did not. So that's again another waiver. Can I transition back to an issue that causes me some consternation and give you a minute to talk about it? Certainly. And this is the testimony of Mr. Britt. And in particular, you know, he testifies as a lay witness. You lay, and I don't mean you personally, but, you know, you lay no foundation for why his information from 1989 forward relates back to 1983. It might. I'm not saying you couldn't have laid a foundation. But to lay that foundation, he would have had to testify as an expert. And then, which he didn't, obviously, because that would be applying non-first-hand information, right? He's sort of speculating about what happened. And then you come back on the back end and ask him the, like, question that you can never ask, right? Does the defendant's, like, description of what happened, do you find it credible? And with no sort of foundation for how he knows that, but also in direct contravention of the idea that we don't ask one witness if another witness is lying or not credible. And so I'm having a little bit of a trouble. And then, you know, obviously the judge comes back later in a different context and says, this guy's really credible. Help me understand why that's not a harmful error, given, as you sort of said earlier, like, what happened in the interrogation room is at the heart of the case. This is the case. And he says, no, in 1983, when I wasn't there, and I'm not an expert, but I'm really credible, I know that these defendants are liars. I see my time is up, Judge Richardson. Can I respond to your question? Please. So just to start with that last point, you know, the cases that talk about an expert witness getting on the stand solely to say that witness is a psychopath and he must be lying, that's not this case. What this witness said was, I don't think that description, no yelling, no threats, no screaming, no cursing, no promises, I don't think that description is credible. But in addition, what we're talking about – It's not just experts that can't say a witness is credible. And we have tons of cases saying that a witness, expert or non-expert, cannot say that that witness is a liar, right? That's the province of the jury. The jury gets to determine that. You could have asked a question that gets to the point, but you asked the question, are they credible? And that's what you can't do, particularly with no foundation for it. I think it is slicing it a little differently to say, do you find Mr. Sneed credible? What they said was, this description, do you find it credible? But your question was about error and whether it was harmful. And my answer is no, for the reasons that we point out in the brief. There were multiple other instances where exactly this same testimony came in. Joint Appendix 1177, Joint Appendix 1424, Joint Appendix 1283, and Mr. Britt's own testimony at Joint Appendix 1081-83 saying, in my experience, I've been the district attorney for 30 years, I know Robeson County practices in the 1980s. He's saying that in response to 1080 where the question is, do you find the defendant's description of the interrogations credible? He's giving the answer to the very question that's not permitted. I mean, that's the end of that day. And then at 1091, they come back and ask the same question again. I mean, it's like it's a little remarkable to me that they ask the question, do you find the defendant's testimony credible? I mean, that's like a golden rule, like don't ask a witness that question, right? Your Honor, and the harmless error point that you made, I think, kicks in here. To the extent that it was not a well-phrased question, number one, the jury was instructed, of course, that it has the job, twice, I think, that it has the job of finding whether these witnesses are credible. But also, when you talk about an error that's committed in the course of the trial, you look at what else came in that could have assuaged that error. You have to ask, as this court said, is there fair assurance that this thing substantially changed the outcome of the trial? That's the harmless error standard. But the other evidence you gave me is all Britt's testimony. So the point is, this is Britt. So what is, other than Britt, who said that in the jury and the plaintiffs, did anybody else say that what went on in the jury room was yelling, screaming, and intimidation? Those were the appendix sites that I read you. So Mr. McCrary, on direct examination at Joint Appendix 1177, talked about the details of the confession and how unlikely it was, in the extreme, that these defendants actually said the details that were in the confession. Ken Rose, Joint Appendix 1424, same thing. Dr. Leo, Joint Appendix 1283, talking about the time that had been consumed at the confession. The bottom line question, as we've been discussing, is, what happened in the room? And many witnesses, not just Mr. Britt, and not just on that one thing that he said, many witnesses testified that what happened in that room had to have been something other than what these defendants said it was, which was just a conversation like we were talking to one of our sons. Let me ask you something. It's a little bit of a takeoff on that, and I know we're over time, but I'm interested in your position on this. The theory, as everybody seems to agree, is what happened in that room. And the theory of the defendants in this case is that they were confessing, the plaintiffs in this case, the defendants there, were confessing to real guilt, that they were actually guilty. They were confessing to that guilt and tried to demonstrate that they were guilty at that time in order to verify the confessions they were giving. And it goes to the heart of that they were forced confessions. Yes. Is it appropriate to have a pardon come in and say that theory is no good because the governor said they're innocent? Judge Niemeyer, I think it was fully appropriate for the pardon to come in for exactly the reason that Judge Richardson said. This is evidence bearing on the question. If these defendants, as the courts in Hill and Sanford and Howard all said, if these defendants had been prepared to say, we concede that the governor's pardon of innocence applies here, then it just would have been an element of the instruction and maybe the whole case wouldn't have turned into the sideshow about guilt or innocence that it did. But these defendants were not prepared to concede that. They made guilt an issue. We're talking about a confession that's made up and fabricated, which is your allegation, or a confession that represents the true facts. They did not have to. They're arguing that the confession represented the true facts. That's their argument. And they're saying the governor has no say in that. The jury has the say in that. And I would think the MAR court could come in. That's an element of the defense. MAR defense is saying the evidence was insufficient. But I'm toying with the question of whether this was just a harmless problem or whether it went to the heart of the defense. And I genuinely don't know the answer to that, and that's why I'm exploring it with you. I think, Judge Niemeyer, the answer is it's a problem of the defendant's own making. There were many ways that the defendants could have tried this case. No, I know. I'm talking about the pardon. The pardon interjects and says an element of their defense was that they signed a confession that was consistent with actual guilt. And, therefore, that was part of their defense. And there was no fabrication. The jury is told, no, they're innocent because the governor said so. And, yet, they are not entitled to go behind that. And that's a collateral proceeding. And I'd be happy to hear you, but I'm just having some trouble with that. And maybe it's all just harmless. I don't know. So I think it is, indeed, harmless for this reason, that these defendants, you will look in vain in either of their briefs for any evidence or testimony that they were precluded from putting in other than what the district court found in his discretion was zero evidence that these pardons of innocence had been procured by fraud. So what you are left with is a defense strategy. My problem is the evidentiary effect. The court kept telling the jury the man is innocent, which takes away their defense to say the confessions were consistent with their guilt. It does not take away that defense about their confessions. In fact, that was part of the litany of joint appendix sites that I read you earlier. If you look through the transcript, and I encourage you, of course, to read the whole transcript because you look at the case as a whole, you will find event after event after event after event of these defendants cross-examining every witness about the fact that Henry purportedly, repeatedly confessed to the crime that we're talking about. They had no trouble putting on evidence about the confessions. Sure, he confessed, and the idea was there's evidence of coercion. You have a strong case on all those, but their defense was that this was not, and one of your big points is that the confessions were fabricated, that they made up evidence of their guilt. In order to make them guilty, they made them silent. That still may be good, but the point is they were arguing that the confessions were not fabricated but consistent with guilt, and the court interposes and says they were innocent because the governor is so pronounced, and we can't impeach that. And so the question is that element of their defense is taken away, isn't it? Your Honor, what the court said repeatedly, except for one occasion, which I will get to, what the court said repeatedly is that the governor has declared them innocent. They have pardons of innocence. Oh, it went further. He says they are innocent. The court lost its cool several times and said they are innocent. One time he said they are innocent for purposes of this trial, and that was immediately following explaining to the jury that the governor had pardoned them. So just to Judge Richardson's question, Justice, they were fully able, over our objections, to put in lots of evidence consistent with the guilt, the confessions to Floyd, to Sultan, to the sister, to the mother. But see, they're all overcome with the court's instruction. That is not correct, Your Honor. The court's instruction to the jury was the governor has issued them pardons of innocence. That was the court's instruction to the jury. No, I'm not talking about instructions at the end. The court repeatedly said they are innocent, and we can't go behind that. So the question is that element is gone. Now the question is whether that's meaningful. I don't know if fabrication is the biggest part. Duress, you had a very strong case on that, too. We did. Anyway, we've gone over. Judge, if I could just respond on that last point. What happened in the room is at the point of this trial. Of course, yeah. What happened in the jury room is that the jury concluded that these confessions were coerced and fabricated from two intellectually disabled teenage boys. That jury verdict in this civil case should be upheld. This court has never in 50 years reversed a jury verdict in a civil case for what we're talking about. Thank you, Your Honor. Thank you very much. All right. Who do we hear from next? Mr. Peeples, is that it? Good morning, Your Honor. Good morning, Your Honor. May it please the court, my name is Adam Peeples, and along with co-counsel, I represent Defendant Allen and the estate of Defendant Sneed. I'd like to begin, Your Honors, if I may, and perhaps that's all I'll get to, but I think it is the heart of this appeal, and that is were these errors harmful? Judge Richardson, you asked that question. Judge Niemeyer, you were very interested in that question most recently. If the court will permit me a brief statement, I had the privilege of being trained by a very good trial lawyer, and he taught me two things, both of which bear upon the trial and the errors at issue in this case. The first of which is that you leave nothing to chance. When I go to trial, I wear a white shirt, I wear continental colors, I don't have a bottle of water on my table. What colors do you represent? Continental colors. Red, blue, and yeah, dark colors. Just like that. We don't leave anything to chance. We don't want the jury to think we have bottles of water if they don't have bottles of water. And so, Your Honors, when the court below said what it said of us, I was absolutely horrified. The record doesn't adequately convey to Your Honors, reading it on paper, what happened in that courtroom, but I was there. And the judge pointed us and he said, they, of the defendant, think he ought to be executed. Now, if I'm worried about what color tie I'm wearing, that statement from the court in front of the jury about us was mind-boggling. Your Honors asked, why is this harmful? That's why it's harmful. Because the court didn't just make interjections. He didn't interrupt us equally. The court made statements about us, about our clients, about the defendants and defense counsel. I understand that, and those points are all well taken. As you know, there are no perfect trials, no perfect judges, and we basically are reviewing this to see whether there is need for a redo or not. And so we really have to assess the scope and impact of any errors that may have come about. The plaintiffs in this case put on a lot of evidence as to what went on in those rooms and a lot of collateral evidence as to whether what was in those confessions was true. And that evidence is pretty powerful, I think, apparently, for the jury. It seems to me, and I'm just sharing this with you, it seems to me the question that we have to resolve is whether that powerful evidence is overcome by the errors that you have pointed out in your briefs. And so that is a little bit of a crystal ball type of assessment because you have to figure out whether the jury would have done the same thing without that. So I think that's where we are, at least that's where I am on here, is I think there were some things that maybe shouldn't have happened. And what you're commenting, judicial demeanor, is something we can't see you experience. We know it happens. And judges often share their views on cases in a very subtle way sometimes. But our assessment has to trust the system to some extent until there is sufficient evidence to show that a redo is necessary. Well, that brings me to my other point, Your Honor. But if I may, before I get there, just to finish the thought, and it's a review of all the record that would deliver this information to Your Honors, but three times the judge told the jury that the plaintiffs were innocent. Three times the judge told the jury that we were accusing these innocent men of being rapists and murderers, and at least on one occasion that they ought to be executed. Your Honor, at that point in time, the jury couldn't help but align itself with the man in the black robe and the plaintiffs. At that point, it became them versus us. That's not the way it should have been. It should have been plaintiffs versus defendants. But to Your Honor's other point, that is the court's management of the trial, Mr. Britt's testimony also goes to the heart of that issue, and that is the second point that I'd like to address with Your Honor. As to the second thing I learned about trying cases, credibility is everything. My mentor used to say, the first liar loses. And going into this trial, we felt pretty good about our chances. Our clients had consistently told the exact same story from beginning to end, from 1983 all the way until the day they were tried. The plaintiffs, on the other hand, have offered contrasting accounts. It is undisputed that they signed written confessions to committing the crimes. It is also undisputed that Mr. McCollum told a news reporter later, outside of the environment of any coercive interrogation tactics, that he did, in fact, do the thing of which he was accused. And so going into it, it was going to be a credibility determination of the, I'm sorry, excuse me, Your Honor. It was going to be a credibility determination of he said, she said.  Did the judge instruct the jury that they're the sole arbiters of credibility? He did, but that was after, and thank you, Your Honor. More than once? He did, but he also told the jury, if I may read, this is a record on 1106. This is regarding Mr. Britt's cross-examination. He said, I don't think he's impeaching him, meaning Mr. Morgan is impeaching Mr. Britt. I think the district attorney is, quote, extremely experienced and credible, close quote. He can take care of himself. Later on, he says, Mr. Britt is one of the most renowned district attorneys in America. And on the next page, I'm reading from 1106-07, and this is it. He says, just for the record, you couldn't find anybody whose credentials are more sacred than Mr. Britt's.  I know that. I've been on this bench 37-plus years as a judge. What good does telling the jury, what good does it do to tell the jury, you decide credibility when the judge himself has said, I know from 37 years of experience. Did the judge also give that instruction or that is ordinarily given about nothing that the judge says or during the course of trial is evidence or to be considered by you in your deliberations? I'm sorry, Your Honor, I don't know the answer to that question. I bet he did. I do know that the question is Do you think, can I ask a different version of this? If the plaintiff's lawyer had said that in closing, would we consider that vouching and improper? So if the plaintiff's lawyer had said, you know, Mr. Britt is extremely credible, his record is unimpeachable, and he's a man of the first order, would that, I mean, we often have some kind of discussion like that by lawyers. And I get this isn't a lawyer, it's a judge. But do you think it would have been a problem if the plaintiff's lawyer had said the same thing the judge said? I do. But to Judge Niemeyer's point, that takes us beyond the crystal ball. There, we're probably in the crystal ball domain of is this really harmful or not. When the judge says it, there is, with all due respect, Your Honors, no way that we can have fair assurance that my clients were given the fair trial they're entitled to have. That was so prejudicial, Your Honors, that we ask that the judgment be reversed, that we be given a new trial, and that the case be reassigned. Thank you. There are no further questions, Your Honors. All right, I think that concludes the evidence. We would normally come down and greet you. This is a tradition of the Fourth Circuit. Judge Parker introduced this in the 1930s. I don't think there's any other court that does it. It's our iconic gesture that this process is still a civilized process where we can all shake hands and we'd love to do it. But we're still observing the protocols of COVID. So we will just have to greet you from the bench and thank you for your arguments and proceed on to the next case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson